**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Mashele F., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 20-cv-50271 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mashele F. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income. The parties have filed cross motions for summary judgment. [24, 31]. As detailed below, Plaintiff's motion for summary judgment [24] is granted and the Commissioner's motion for summary judgment [31] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

## BACKGROUND

### A. Procedural History

On May 28, 2016, Plaintiff filed an application for Social Security disability insurance benefits under Title II of the Social Security Act. R. 90. She alleged a disability beginning on May 21, 2016. *Id.* The Commissioner denied her application on July 8, 2016, and upon reconsideration on October 18, 2016. R. 114, 119. Plaintiff filed a written request for a hearing on November 13, 2016. R. 128. On November 28, 2018, a hearing was held before Administrative Law Judge ("ALJ") Patricia Kendall at which Plaintiff, medical expert Sai R. Nimmagadda, M.D., and vocational expert Michelle Pagella each appeared and testified. R. 17–62. Plaintiff was represented by counsel. *Id*.

On April 26, 2019, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 90–108. Plaintiff appealed the decision to the Appeals Council and the Appeals Council denied Plaintiff's request for review. R. 1–6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [8]. Now before the Court are Plaintiff's motion for summary judgment [24] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [31].

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

B.  The ALJ's Decision

The ALJ conducted the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since May 21, 2016, when Plaintiff alleges her disability arose. R. 92. At step two, the ALJ found that Plaintiff suffered from the severe impairments of peripheral neuropathy and obesity. R. 93. The ALJ found Plaintiff's lymphoma, sleep apnea, degenerative joint disease in the knees, and shortness of breath to be non-severe impairments, which did not more than minimally limit Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 100.

Before moving to step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work subject to not climbing ladders, ropes, or scaffolds and only occasionally climbing ramps or stairs, stooping, crouching, kneeling, crawling, and operating foot controls. R. 101. Further, the ALJ found that Plaintiff needed to avoid concentrated exposure to wetness, vibration, the use of dangerous machinery, and unprotected heights. *Id*. At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a Surgical Technician and as a Teacher's Aide. R. 107. For this reason, the ALJ concluded—without proceeding to step five —that Plaintiff was not disabled under the Social Security Act from May 21, 2016, to April 26, 2019, the date of the decision. R. 108.

## STANDARD OF REVIEW

The Court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)).

The Court is obligated to "review the entire record, but [the Court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The Court's] review is limited also to the ALJ's rationales; [the Court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). Nor can ALJs "succumb to the temptation to play doctor and make their own independent medical findings," *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), or "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d

722, 728 (7th Cir. 2018). The Court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted).

**DISCUSSION**

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because she erred by discrediting Dr. Nimmagadda's opinion limiting Plaintiff to sedentary work and adopting instead the outdated opinions of the non-reviewing state-agency medical consultants. Plaintiff additionally contends that the ALJ erred in her analysis of Plaintiff's subjective complaints.

The ALJ should "rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). While generally discretionary "[t]he use of a medical expert can help ALJs resist the temptation to 'play doctor,' a label that usually produces a remand on judicial review, by evaluating medical evidence on his or her own." *Gebauer v. Saul*, 801 F. App'x 404, 408 (7th Cir. 2020). Once the expert's testimony is considered, "the ALJ is entitled to accept any part of an expert's testimony or reject it completely." *Serpico v. Berryhill*, No. 16-CV-7374, 2017 WL 4633214, at *7 (N.D. Ill. Oct. 16, 2017) (quoting *Glass v. Astrue*, 263 Fed. App'x. 526, 529 (7th Cir. 2008)). However, the ALJ must support her discounting of expert testimony by substantial evidence. *Id*.

Based on his review of the medical record and observation of Plaintiff's testimony, Dr. Nimmagadda testified that Plaintiff suffered from the "main impairment" of "neuropathy of the feet" and additional medically determinable impairments of splenial marginal zone lymphoma in remission, obesity, breast cancer in remission, sleep apnea syndrome, "asthma/COPD", and "chronic pain syndrome that's effectively fibromyalgia-like, but mainly . . . from the neuropathy." R. 51. When asked by the ALJ how these impairments limited Plaintiff's ability to work, Dr. Nimmagadda explained: "The lymphoma is connected to the neuropathy. The sleep apnea is connected with the asthma. The obesity is also connected with the fibromyalgia. So they're all intertwined. So there's a congregation of impairments that would all be severe here." R. 52.

The ALJ asked Dr. Nimmagadda to cite specific evidence from the medical record supporting his identification of "asthma/COPD" as one of Plaintiff's impairments. R. 52. Dr. Nimmagadda pointed to evidence of "respiratory problems with breathing", "airway reversibility", and testing showing "mild obstruction", but indicated confusion as to whether asthma or COPD had been diagnosed. R. 52–53. On further questioning by the ALJ, Dr. Nimmagadda stated that while not severe, Plaintiff's asthma still constituted an impairment. R. 54. Dr. Nimmagadda testified that he did not see a diagnosis of fibromyalgia in record, but "more a chronic pain syndrome associated with walking." *Id*.

When questioned, Dr. Nimmagadda confirmed for the ALJ that Plaintiff's neuropathy was mainly described in her feet. *Id*. The ALJ sought no further information regarding Dr. Nimmagadda's assessment of Plaintiff's neuropathy symptoms. *Id*. In assessing Plaintiff's RFC, Dr. Nimmagadda opined that "based upon the combination of impairments of the obesity and lung disease and the neuropathy [Plaintiff was limited to] a sedentary resident functional capacity,

3

which means occasionally lifting ten pounds, frequently lifting less than ten pounds, stand[ing] and/or walk[ing] for up to two hours in an eight-hour day, sit[ting] for about six hours in an eight-hour day." R. 55−56.

When provided an opportunity to examine Dr. Nimmagadda, Plaintiff's counsel asked if Plaintiff was limited in her ability to operate foot pedals. R. 56−57. In response, the expert opined that Plaintiff could operate foot pedals only occasionally. *Id*. This exchange regarding foot pedals comprised the entirety of Plaintiff counsel's cross-examination of Dr. Nimmagadda. *Id*.

In her decision, the ALJ gave some weight to Dr. Nimmagadda's opinion, but did not credit his finding that Plaintiff was limited to sedentary work. R. 107. Despite crediting Dr. Nimmagadda's "assessment of medically determinable impairments and postural and environmental limitations," the ALJ determined that "the medical evidence of record support finding that the claimant can do more than sedentary work." R. 107. The ALJ reasoned that Dr. Nimmagadda failed to "support his conclusion with citations to the record noting any impaired gait or reduced strength or other abnormalities related to claimant's complaint of pain, making them less persuasive." R. 107. Yet, as the Plaintiff argues in her brief the ALJ only asked Plaintiff to provide specific citations in relation to her respiratory problems. She did not ask Dr. Nimmagadda to provide specific citations to support his findings regarding the mobility limitations caused by Plaintiff's neuropathy symptoms.[2]

"An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)); *See Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) (While the claimant "bears the burden of producing evidence of her impairments, . . . [i]f the ALJ found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations."); *Smith v. Berryhill*, No. 16 C 5451, 2018 WL 4679584, at *5 (N.D. Ill. Sept. 28, 2018) ("The ALJ should have followed up with [claimant's treating physician] and asked him to specify or clarify his opinion if she thought it insufficient.").

The Commissioner contends that the application of the "readily discernable" standard in *Similia* supports her position. It does not, because the fact patterns simply are not comparable. In *Simila*, the Court rejected the claimant's argument that the ALJ was required to recontact a medical expert after discerning and discussing the evidence on which the expert relied in his written report and finding his opinions unsupported by that evidence, while also finding that the ALJ erred in not recontacting the expert regarding records it was unclear that the expert reviewed. *Simila*, 573 F.3d at 517 (finding that the ALJ's failure to recontact the medical expert constituted harmless error). The medical expert whose opinions were at issue in *Simila* examined the claimant at the request of claimant's own attorney and submitted his opinions to the ALJ in writing. *See id*. at 510−11. Here, Dr. Nimmagadda was called by the ALJ herself and delivered his opinion via oral testimony.

---

[2] Plaintiff also argues that Dr. Nimmagadda's limitation of Plaintiff to sedentary work was supported by the opinion of her treating physician. On July 22, 2016, Rosalia Derosales. M.D., Plaintiff's treating physician at the Rockford VA Primary Care Clinic opined that Plaintiff "can seek employment with restrictions to include no walking, no prolonged standing, preferably a desk job due to her health concerns." R. 572. The ALJ gave no weight to Dr. Derosalas's opinion. R. 106. The Court finds no need to consider this argument in light of the other reasoning in this opinion.

4

In examining him, the ALJ exercised control over the scope of his testimony and its level of detail. Plaintiff does not contend that the ALJ erred by failing to recontact Dr. Nimmagadda, but rather that the ALJ erred by declining to ask him questions that she later discounted his testimony for failing to address.

The ALJ's reasoning for discrediting Dr. Nimmagadda's opinion effectively boils down to her finding that she could not readily discern the support for his opinion from the record and Plaintiff's testimony because he failed to cite the specific evidence in the record on which he relied. The inability to readily discern the medical support for an expert opinion is the factor that triggers the duty to seek additional information. *Simila*, 573 F.3d at 516. The record here consisted of hundreds of pages of medical records including documentation of Plaintiff's 2017 lymphoma diagnosis and other records unreviewed by any other medical expert. The ALJ had a clear opportunity to obtain this information she deemed critical at the negligible cost of prolonging the hearing by a few minutes. The ALJ was fully aware that she could ask Dr. Nimmagadda to provide specific citations to support his findings. She asked Dr. Nimmagadda to do exactly that regarding his testimony that Plaintiff suffered from asthma. R. 52–54. Yet, the ALJ did not similarly challenge Dr. Nimmagadda's finding of Plaintiff's neuropathy in the feet, the disabling impact of her pain symptoms, or the neuropathy's connection to her lymphoma diagnosis. R. 54.

The Commissioner contends that Plaintiff's counsel, not the ALJ, erred in failing to question Dr. Nimmagadda on the specific medical evidence supporting his opinion. But Plaintiff did not call Dr. Nimmagadda to testify, the ALJ did. Reading the Commissioner's argument to its logical conclusion creates absurd results. The ALJ could call a medical expert to testify, decline to ask for any evidentiary support when the expert testified to a claimant's severely limited RFC, and then the claimant's counsel would need to question the expert on the specific evidentiary support for every element of the expert's testimony to ensure the ALJ did not later decide to disregard the expert's testimony on the grounds that it lacked specific evidentiary support. Plaintiff "bears the burden of producing medical evidence that supports her claims of disability." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). But the Commissioner cites no case law to support the argument that this burden extends to requiring Plaintiff when examining a medical expert called by the ALJ to establish specific evidentiary support for that expert's favorable testimony that the ALJ herself declined to question when provided the opportunity to do so.

Rather than adopting Dr. Nimmagadda's opinion, the ALJ "balanced" his opinion with that of the state agency consultants whose opinions she also found entitled to some weight. See R. 106–07. On July 7, 2016, state-agency medical consultant Bharati Jhaveri, M.D., opined that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. R. 69. She concluded that Plaintiff was limited to light work. R. 71–72. On October 1, 2016, William Backlund, M.D., concurred on reconsideration with Dr. Jhaveri's assessment of Plaintiff's exertional limitations and found Plaintiff capable of returning to her former work as a surgical technician. R. 81–84.

While the ALJ did modify the state agency consultants' limitations to be more in line with Dr. Nimmagadda's opinion, the ALJ concurred with the state agency consultants that Plaintiff was capable of light work, not limited to sedentary work as Dr. Nimmagadda opined. *See* R. 107. If Dr. Nimmagadda and the state agency medical consultants had provided their opinions based on

their reviews of a substantially similar medical record, this may not have constituted reversible error. However, the ALJ failed to account for the fact that Dr. Nimmagadda's opinion was provided on November 28, 2018 with the benefit of more than two years of additional evidence totaling hundreds of pages of medical records unavailable to Dr. Jhaveri and Dr. Backlund.

On August 13, 2017, Plaintiff went to the emergency room with an array of symptoms which included a pounding headache, lightheadedness, and neck pain. R. 766. On August 18, 2017, she underwent a biopsy at the University of Wisconsin Hospitals and Clinics and the results indicated that she suffered from splenic marginal zone lymphoma. R. 675. On September 1, 2017, Christopher Fletcher, M.D., a hematology specialist at the VA Medical Center, reviewed the splenic marginal zone lymphoma diagnosis with Plaintiff. R. 762. He explained that though its symptoms are treatable, splenic marginal zone lymphoma is a chronic disease which Plaintiff will suffer from for the rest of her life. *Id*. Dr. Fletcher prescribed Plaintiff a multi-cycle course of rituximab, an antibody medication that provides a non-chemotherapy alternative to treating certain cancers. R. 761–62. Upon completing six cycles of rituximab therapy, Plaintiff reported a significant improvement in her symptoms. R. 753. Upon examining Plaintiff on October 26, 2017, VA medical staff concluded that "[n]o further treatment necessary for lymphoma at this time." R. 754.

In addition to her lymphoma diagnosis and treatment, Plaintiff continued to report respiratory distress and pain symptoms relevant to her RFC determination in visits to medical providers. For example on April 18, 2018, Plaintiff told Dr. Derosales that she had been experiencing shortness of breath, fatigue, and pain in both knees. R. 705. Dr. Derosales ordered an x-ray examination of her left knee. R. 775. This x-ray examination showed partial narrowing of the medial compartment and mild spurring and the interpreting radiologist recorded his interpretation that these results showed "degenerative change most pronounced medially." R. 779.

Both state agency assessments were based on a review of the medical record that predated these and other medical records. The most recent medical records reviewed by Dr. Backlund on reconsideration are dated September 6, 2016. R. 50. Dr. Nimmagadda reviewed records up to and including those dated August 27, 2018. *See* R. 75. The medical records reviewed only by Dr. Nimmagadda include not only evidence of the progression of those symptoms present in 2016 including the degenerative change to Plaintiff's left knee, but also a new diagnosis of splenic marginal zone lymphoma.

"An ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion." *Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'") (quoting *Moreno*, 882 F.3d at 728). Here, the ALJ erred in adopting the state agency consultants' opinions over that of Dr. Nimmagadda, because the additional medical records particularly Plaintiff's 2017 lymphoma diagnosis "changed the picture so much that it reasonably could have changed" Dr. Jhaveri's and Dr. Backlund's opinions. *See Massaglia*, 805 F. App'x 406, 410.

The ALJ credited the state agency medical consultants' assessments over Dr. Nimmagadda's testimony when evaluating the limitations caused by neuropathy, even though their assessments preceded a significant new diagnosis potentially linked to her neuropathy. Dr. Nimmagadda connected Plaintiff's lymphoma, diagnosed in August 2017 more than ten months after Dr. Backlund's RFC assessment, to her neuropathy. Though the ALJ found Plaintiff's peripheral neuropathy to be a severe impairment, she attributes Plaintiff's neuropathy to the chemotherapy treatments which followed Plaintiff's 2008 breast cancer diagnosis. R. 105. Even if as the ALJ concluded, Plaintiff's neuropathy relates back to that chemotherapy treatment, this does not rule out a worsening of symptoms brought on by her lymphoma. Despite Dr. Nimmagadda's testimony, the ALJ never noted in her decision the connection between the neuropathy and the lymphoma before determining that "there is insufficient persuasive evidence [of Plaintiff's neuropathy symptoms] in the record to support finding that [Plaintiff] is limited to sedentary exertional work." R. 105.

As the ALJ's reasoning for discounting Dr. Nimmagadda's testimony rested upon her failure to solicit information through examination and her reliance upon outdated medical opinions, the Court finds that her RFC determination was not supported by substantial evidence. Because the Court finds these errors necessitate a remand, the Court has not considered the Plaintiff's other arguments.

### CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [24], is granted, the Commissioner's motion for summary judgment [31], is denied, and the Commissioner's decision is remanded for further consideration consistent with this opinion.

Date: 04/06/2023                    ENTER:


                                   _Margaret J. Schneider_
                                   United States Magistrate Judge

7